1  Scott P. Jang (State Bar No. 260191)
   JACKSON LEWIS P.C.
2  50 California Street, 9th Floor
   San Francisco, CA 94111-4615
3  Telephone:    (415) 394-9400
   Facsimile:    (415) 394-9401
4  E-mail:       Scott.Jang@jacksonlewis.com

5  Sean M. Bothamley (State Bar No. 300100)
   Jimmy Macias (State Bar No. 287027)
6  JACKSON LEWIS P.C.
   160 W. Santa Clara St., Suite 400
7  San Jose, CA 95113
   Telephone: (408) 579-0404
8  Facsimile: (408) 454-0290
   E-mail: Sean.Bothamley@jacksonlewis.com
9  E-mail: Jimmy.Macias@jacksonlewis.com

10 Attorneys for Defendants
   COOLPORT MANAGEMENT LLC; DREISBACH
11 ENTERPRISES, INC

12
13                       UNITED STATES DISTRICT COURT

14                       NORTHERN DISTRICT OF CALIFORNIA

15 | TIMOTHY JOHNSON, an individual, on         | Case No. 3:23-cv-06419-AGT
   | behalf of himself and others similarly situated, |
16 |                                             | **DEFENDANTS COOLPORT
   |            Plaintiff,                       | MANAGEMENT LLC AND
17 |                                             | DREISBACH ENTERPRISES, INC.'S
   |       v.                                    | OPPOSITION TO PLAINTIFF'S
18 |                                             | MOTION TO REMAND**
   | COOLPORT MANAGEMENT LLC, a
19 | Delaware limited liability company;
   | DRESISBACH ENTERPRISES, INC. a
20 | California stock corporation; and DOES 1    | State Action Filed: 10/31/2023
   | through 50, inclusive                       | Removal Filed: 12/13/2023

21                          .

22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..........................................................................................................1

II. LEGAL ANALYSIS......................................................................................................1

    A. Legal Standard for Burden of Establishing Jurisdiction and Opposing Remand. ..............................................................................................................1

    B. Grounds for Federal Question Jurisdiction: LMRA Preemption. ............................2

        1. Plaintiff's Analysis to Step One of the *Burnside* Analysis, Founded Upon Antiquated Pre-*Curtis* Authority, Must Be Rejected. .......................2

    C. Defendants Satisfy Step One of the *Burnside* Analysis for LMRA Preemption. .........................................................................................................5

        1. Plaintiff's Claims Are Based on Entitlements that Arise from the CBA and Not from California Law, Preempting Such Claims and Establishing Grounds for Jurisdiction. ...........................................................5

        2. The CBA's Grievance Procedure Provides a "Clear and Unmistakable" Waiver of a Judicial Forum, such that Plaintiff's Rights to Remedies Arise Out of the CBA. ................................................8

    D. Defendants Satisfy Step Two of the *Burnside* Analysis for LMRA Preemption. .........................................................................................................9

        1. Plaintiff's Claims are Substantially Dependent Upon Interpretation of the CBA, Preempting Such Claims and Establishing Grounds for Jurisdiction. ................................................................................................9

            i. Plaintiff's disputed applicability and interpretation of the CBA's Grievance Procedure concedes that Plaintiff's rights to pursue claims in a judicial forum requires interpretation of the CBA ................................................................................................9

            ii. Interpretation of the CBA's definition of "compensable time" is required to resolve Plaintiff's claims..........................................11

III. CONCLUSION............................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Airlines Inc. v. Schurke*
  898 F.3d 904, 920-21 (9th Cir. 2018) ................................................................................. 2

*Blackwell v. Com. Refrigeration Specialists, Inc.*,
  2021 U.S. Dist. LEXIS 119212, No. 2:20-CV-01968-KJM-CKD (E.D. Cal.
  June 25, 2021) ..................................................................................................................... 4

*Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*,
  2022 U.S. Dist. LEXIS 42113, No. CV-2109959-MWF-AGR (C.D. Cal. Mar.
  8, 2022) ............................................................................................................................... 4

*Burmudez v. Dragados USA, Inc.*
  (E.D. Cal. Nov. 18, 2021) ................................................................................................... 8

*Burnside v. Kiewit Pac. Corp.*,
  491 F.3d 1053 (9th Cir. 2007) ............................................................................................. 2

*Chatman v. Wedriveu, Inc.*,
  2022 U.S. Dist. LEXIS 199533 (N.D. Cal. Oct. 28, 2022) .............................................. 5, 6

*Cleveland v. Groceryworks.com, LLC*
  200 F. Supp. 3d 924 (N.D. Cal. 2016) ................................................................................ 7

*Cortez v. Doty Bros. Equip. Co.*,
  15 Cal.App.5th 1 (2017) ...................................................................................................... 8

*Cramer v. Consol. Freightways, Inc.*,
  255 F.3d 683 (9th Cir. 2001) ............................................................................................... 2

*Curtis v. Irwin Indus., Inc.*,
  913 F.3d 1146 (9th Cir. 2019) .................................................................................. 1, 2, 3, 4

*Dart Cherokee Basin Operating Co. LLC v. Owens*,
  574 U.S. 81 (2014) .............................................................................................................. 1

*Fennix v. Tenderloin Hous. Clinic, Inc.*,
  2020 U.S. Dist. LEXIS 205587, No. 20-CV-05207-DMR (N.D. Cal. Nov. 3,
  2020) .................................................................................................................................... 4

*Frlekin v. Apple*,
  8 Cal.5th 1038 (2020) ....................................................................................................... 11

*Gay v. Pac. Steel Grp.*,
  2021 U.S. Dist. LEXIS 112164, No. 20-cv-08442-HSG (N.D. Cal. June 15,
  2021) ...................................................................................................................................9

*Giles v. Canus Corp.*,
  2022 U.S. Dist. LEXIS 146789, No. 22-CV-03097-MMC (N.D. Cal. Aug. 16,
  2022) ...................................................................................................................................4

*Hunter v. Philip Morris USA*,
  582 F.3d 1039 (9th Cir. 2009) ............................................................................................1

*Lane v. Francis Cap. Mgmt. LLC*,
  224 Cal.App.4th 676 (2014) ...............................................................................................9

*Radcliff v. San Diego Gas & Elec. Co.*,
  519 F.Supp.3d 743 (S.D. Cal. 2021) ..................................................................................4

*Renteria-Hinjosa v. Sunsweet Growers, Inc.*,
  2023 U.S. Dist. LEXIS 179974 (E.D. Cal. Oct. 3, 2023) ...................................................8

*Shwiyat v. Martin Marietta Materials, Inc.*,
  2023 U.S. Dist. LEXIS 226843 (N.D. Cal. Dec. 20, 2023) ................................................6

*Vasserman v. Henry Mayo Newhall Memorial Hospital*,
  65 F. Supp. 3d 932 (C.D. Cal. 2014) ..................................................................................3

*Williams v. Securitas Sec. Servs. U.S.*,
  2023 U.S. Dist. LEXIS 143640 (N.D. Cal. Aug. 16, 2023) ................................................6

*Young v. Securitas Sec. Servs. USA, Inc.*,
  2018 U.S. Dist. LEXIS 34774, No. 17-CV-05342-JCS (N.D. Cal. Mar. 2,
  2018) ...................................................................................................................................3

**Statutes**

28 U.S.C. § 1367 ...........................................................................................................................7

California Business and Professions Code section 17200, et seq. ................................................7

California Labor Code section 512(e) ...........................................................................................6

California Labor Code section 514 ...........................................................................................5, 6

LMRA ..................................................................................................................................*passim*

LMRA § 301 .......................................................................................................................2, 3, 4, 5

**Other Authorities**

IWC Wage Order 9-2001, Section 2(H) .....................................................................................11

1   IWC Wage Order 9-2001, Section 12(C)......................................................................................6

2   IWC Wage Order 16-2001, Section 12(E) .....................................................................................6

3   IWC Wage Order 16-2001 .............................................................................................................9

## I. INTRODUCTION

This Court has federal-question jurisdiction over Plaintiff Timothy Johnson's ("Plaintiff") entire action as each and every claim he raises is subject to preemption under the Labor Management Relations Act ("LMRA") for several reasons, including: (1) Plaintiff being statutorily excepted from his claims because he is covered by a collective bargaining agreement ("CBA") (such that his rights with respect to those claims "arise out of" the CBA); (2) each of his claims being subject to a "clear and unmistakable" arbitration provision that waives Plaintiff's rights to a judicial forum for adjudication of his claims, such that Plaintiff's rights to those remedies necessarily arise out of the CBA; and (3) his claims otherwise being substantially dependent upon interpretation of the CBA in order to adjudicate his rights to those claims and potential remedies.

Plaintiff primarily challenges Defendants' Removal by relying on authority which pre-dates the Ninth Circuit's seminal decision in *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019). Plaintiff otherwise presents arguments that either concede a disputed interpretation of the CBA (and therefore concede federal question jurisdiction) or that are simply unsupported by any relevant authority (*e.g.*, that the CBAs' arbitration provision does not "clearly and unmistakably" governs his claims, rights, and remedies). Plaintiff's Motion to Remand must be denied, and this Court should turn its attention to the issue of compelling Plaintiff to arbitration, where Plaintiff's disputes must be resolved.

## II. LEGAL ANALYSIS

### A. Legal Standard for Burden of Establishing Jurisdiction and Opposing Remand.

On a motion to remand, the removing party bears the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). To the extent that Plaintiff attacks Defendants' *Notice of Removal* as not satisfying this burden, this is misguided, as a Notice of Removal need only provide a "a short and plain statement of the grounds for removal," which Defendants' satisfies. *See Dart Cherokee Basin Operating Co. LLC v. Owens,* 574 U.S. 81, 89 (2014). As set forth in this opposition, Defendants have met their burden that federal question jurisdiction exists as to all claims alleged on multiple, independent grounds.

### B. Grounds for Federal Question Jurisdiction: LMRA Preemption.

There is a two-step test (called the "*Burnside* analysis") to determine whether a claim is "grounded in a CBA" and therefore preempted by the LMRA and subject to federal question jurisdiction. *See Alaska Airlines*, 898 F.3d 904, 920-21 (9th Cir. 2018) (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007). At the first step, courts "evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Id*. at 921. If the answer is yes, "the claim is preempted and [the] analysis ends there." *Id*. at 1153 (citation and brackets omitted).

If the answer is no, the second step requires courts to determine if the state law right is substantially dependent on an analysis of the CBA, which turns on whether the claim cannot be resolved by simply looking to versus interpreting the CBA. *Id*. at 1151. Claims are preempted to the extent resolution of a claim requires interpretation of the CBA, which necessarily arises if there is an active dispute over "the meaning of contract terms." *Id*.

Defendants satisfy grounds for removal at either step of the *Burnside* analysis.[1]

#### 1. Plaintiff's Analysis to Step One of the *Burnside* Analysis, Founded Upon Antiquated Pre-*Curtis* Authority, Must Be Rejected.

LMRA § 301 is "a jurisdictional statute" that "authorized the federal courts to develop a federal common law of CBA interpretation." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001). This federal common law and § 301 preemption extend to all cases "whose resolution 'is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Id*. Preempted claims include those "founded directly on rights created by collective-bargaining agreements," as well as those "substantially dependent on analysis of a collective-bargaining agreement." *Id*. "[F]ederal preemption under § 301 is an essential component of federal labor policy" as it is an "effort to erect a system of industrial self-government" that "calls into being a new common law." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted). "[T]he labor arbitrator [chosen by the CBAs]

---

[1] Defendants proffer these arguments solely for establishing subject matter jurisdiction before the Court, and not as to the merits of defenses (*i.e.*, grounds for dismissal of claims) based on preemption, which the parties have expressly reserved for determination by an arbitrator pursuant to the CBA's grievance procedures.

is usually the appropriate adjudicator for CBA disputes because [they were] chosen due to the parties' confidence in [their] knowledge of the common law of the shop." *Id.*

Federal case law regarding LMRA § 301 preemption has shifted in recent years. In certain prior federal cases where employees asserted state law claims of violations of workers' statutory rights, the employers countered that the statutes providing those rights contained exceptions for workers covered by valid CBAs, so the rights arose from the CBAs and were preempted by LMRA § 301; however, earlier federal courts rejected that preemption argument because, they reasoned, the statutory exceptions were affirmative defenses that did not create LMRA preemption, and in some cases, did not confer federal jurisdiction. *See, e.g.*, *Young v. Securitas Sec. Servs. USA, Inc.*, 2018 U.S. Dist. LEXIS 34774 at *17, No. 17-CV-05342-JCS (N.D. Cal. Mar. 2, 2018) (reasoning that statutory exceptions to labor law requirements "are affirmative defenses [that] do not give rise to section 301 preemption, even if adjudication of those defenses would require reference to the CBA); *Vasserman v. Henry Mayo Newhall Memorial Hospital*, 65 F. Supp. 3d 932, 953-54 (C.D. Cal. 2014) (same).[2]

But in 2019, the Ninth Circuit reached a different conclusion in *Curtis v. Irwin Indus., Inc.* In *Curtis*, the defendant removed to federal court the plaintiff's state law claims premised on violations of the California Labor Code, including its provision for overtime pay under Labor Code section 510. *Curtis*, 913 F.3d at 1150-51. The defendant asserted that the overtime claim (among others) was preempted by LMRA § 301 because, although the plaintiff's claim was for violation of a California-based statutory right to overtime wages, the statutory exception to that right under Labor Code section 514 applied because the plaintiff was covered by a valid CBA. *See id.* at 1151. Any right the plaintiff had to overtime wages, the defendant argued, came not from the statute but from the CBA provisions. *See id.* The overtime claim, therefore, was preempted by LMRA § 301 because the claim arose from the terms of the CBA, and because it was preempted, the federal court had jurisdiction. *See id.*

The Ninth Circuit agreed, determining that it had jurisdiction over the alleged state law

---

[2] Plaintiff cites to *Vasserman* in his Motion to Remand for this very premise. *See* Plaintiff's Motion to Remand, 10:25-11:3.

violation because the statutory exception applied and so the claim was preempted by § 301. *See id.* at 1151 n.4 (determining the district court had jurisdiction over the overtime claim under § 301); *id.* at 1155 (holding the overtime claims arose under the CBA and so were preempted by § 301). The court further declared: "Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary preemptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 1152. "In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Id.*

Post-*Curtis* decisions have since properly applied *Curtis'*s clarified jurisdictional mandate, finding subject matter jurisdiction based on § 301 preemption, and denying motions to remand. *See, e.g., Fennix v. Tenderloin Hous. Clinic, Inc.*, 2020 U.S. Dist. LEXIS 205587, No. 20-CV-05207-DMR (N.D. Cal. Nov. 3, 2020) (explicitly rejecting plaintiff's reliance on *Vasserman* and other pre-*Curtis* authorities as "no longer good law"); *Blackwell v. Com. Refrigeration Specialists, Inc.*, 2021 U.S. Dist. LEXIS 119212, No. 2:20-CV-01968-KJM-CKD (E.D. Cal. June 25, 2021); *Radcliff v. San Diego Gas & Elec. Co.*, 519 F.Supp.3d 743, 747-49, 752 (S.D. Cal. 2021); *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, No. CV-2109959-MWF-AGR (C.D. Cal. Mar. 8, 2022); *Giles v. Canus Corp.*, 2022 U.S. Dist. LEXIS 146789, No. 22-CV-03097-MMC (N.D. Cal. Aug. 16, 2022).

The vast bulk of Plaintiff's arguments, however, rely upon decisions pre-dating the seminal *Curtis* decision, and in doing so, regurgitate outdated law.[3] For example, Plaintiff makes the broad claim (supported with several citations to decades-old cases), that "Courts have consistently held that wage and hour claims under the California Labor Code… are not preempted by the LMRA and do not raise federal questions subject to removal."[4] Plaintiff's arguments fly in the face of the clear and unequivocal dictate of *Curtis*, which bears repeating: "[A] civil complaint *raising claims*

---

[3] *See* Plaintiff's Motion to Remand, 3:5-4:2 (discussing the first step of the *Burnside* analysis), 4:23-6:3 (failing to apply Curtis' shift towards the first step of the *Burnside* analysis), 6:4-24 & 7:8-9-21 (incorrectly implying that the first step of the *Burnside* analysis can never be satisfied for California Labor Code claims, and only the second step can apply), 6:25-7:7 (repeating stale "only an affirmative defense" arguments).
[4] *See* Plaintiff's Motion to Remand, 9:15-18.

*preempted by § 301* raises a federal question *that can be removed to a federal court.*" *Id.* (emphasis added).

Under *Curtis* (which represents the Ninth Circuit's current mandate for applying the first step of the *Burnside* analysis), when a plaintiff "is statutorily excepted from overtime, meal period, and sick pay statutes because she is covered by a valid CBA… [the plaintiff's] rights to overtime, meal periods, and sick leave wages arise from the CBA and not from the statute, and so are preempted by LMRA § 301." *Chatman v. Wedriveu, Inc.*, 2022 U.S. Dist. LEXIS 199533 at *18, 3:22-cv-04849-WHO at *11 (N.D. Cal. Oct. 28, 2022) (citing *Curtis*, 913 F.3d at 1154-55).  This is exactly the case at hand.

    **C.**    **Defendants Satisfy Step One of the *Burnside* Analysis for LMRA Preemption.**

        **1.**  **Plaintiff's Claims Are Based on Entitlements that Arise from the CBA and Not from California Law, Preempting Such Claims and Establishing Grounds for Jurisdiction.**

<u>Plaintiff's Second Cause of Action – "Failure to Pay [Straight-Time] Wages and Overtime"</u>

Plaintiff's Second Cause of action is premised on two theories: (1) a failure by Defendants to pay wages for hours worked **at their straight-time CBA-provided rates;**[5] and (2) a failure by Defendants to pay overtime premium wages.

As to the first theory, by its very nature, any right to straight-time wages is a right conferred solely by the CBA, as the CBA is the agreement that creates the obligation to pay wages at those straight-time rates.

As to the second theory, Plaintiff's overtime claim arises under the CBAs because of the application of California Labor Code section 514.  As set forth in Defendants' Notice of Removal, the CBAs expressly provide for (1) the wages, hours of work, and working conditions of employees; (2) premium wage rates for all overtime hours worked; (3) regular hourly rates of pay

---

[5] *See, e.g.,* Complaint, ¶9 ("During the period of four years prior to the filing of this action through its resolution, Plaintiff and the Class Members have been either not paid by Defendants for all hours worked or **not paid at the appropriate** minimum, **regular and overtime rates**"), ¶13 ("This resulted in wide-spread off the clock work where Employees in the Class were **not compensated at their required rates for all hours worked**, including time when they remained under Defendants' control during mandatory entry and exit security and health screening"), ¶74 ("Defendants thus had a consistent policy of **not paying** Employees wages for all hours worked, including hours at **their required regular, overtime, and double-time rates,** and as required under applicable living wage ordinances.") (emphasis added).

of not less than 30 percent more than the state minimum wage rate, including for Plaintiff; and (4) a comprehensive grievance procedure that mandates union employees submit any and all wage and hour disputes to final and binding individual arbitration, including for Plaintiff.[6]  As such, California Labor Code section 514's statutory exception to Labor Code section 510 applies, and Plaintiff's overtime claim "arises out of" the CBA, thereby preempting the claim. *See, e.g., Chatman*, 2022 U.S. Dist. LEXIS 199533 at *18.

Plaintiff's Third and Fourth Causes of Action – Meal Period & Rest Period Liability

Plaintiff's Third and Fourth Causes of Action are premised on similar theories: a failure to provide meal periods, and a failure to authorize and permit rest periods, pursuant to Labor Code section 226.7, giving rise to liability for premium wages at the employee's regular rate of pay.

Both of these claims arise under the CBA for reasons similar to Plaintiff's overtime claim. Specifically, similar CBA-exceptions to Labor Code section 226.7's liability exists for meal periods within Labor Code section 512(e), and for rest periods within applicable IWC Wage Orders. *See, e.g.,* IWC Wage Order 9-2001, Section 12(C); *see also Shwiyat v. Martin Marietta Materials, Inc.*, 2023 U.S. Dist. LEXIS 226843 *22, 3:23-cv-00283-JSC at *17-18 (N.D. Cal. Dec. 20, 2023) (finding preemption of California Labor Code rest period claim under application of similar exception found at IWC Wage Order 16-2001, Section 12(E)).

Plaintiff's Fifth through Eighth and Twelfth Causes of Action – Derivative Claims

Plaintiff's Fifth, Sixth, Seventh, and Eighth Causes of Action are each premised, in whole or in part, on liability arising from Plaintiff's Second through Fourth Causes of Action for unpaid wages.  Derivative claims such as these are also preempted by the LMRA. *See Chatman*, 2022 U.S. Dist. LEXIS 199533 at *18 ("Federal courts 'look to the underlying character of the claim' and find jurisdiction where the [statutory] claim is, 'in part, derivative of [plaintiff's] own overtime and meal period claims.' ") (internal citation omitted); *Williams v. Securitas Sec. Servs. U.S.*, 2023 U.S. Dist. LEXIS 143640 at *19, 23-cv-01863-LB at *14 (N.D. Cal. Aug. 16, 2023) ("The derivative claims for failure to provide accurate statements and a violation of the UCL (claims five and six)

---

[6] *See* Dkt. No. 1-3 (Declaration of Karen Carlson in Support of Defendants' Removal, ¶¶4-5 and **Exhibits A & B** at Sections 10.00, 11.00, 16.00, and Schedules A).

are preempted because they depend on the preempted claims.").

The Fifth Cause of Action for violations of Labor Code section 226(a) alleges liability for inaccurate wage statements because (among other claims) "the wage statements given to Employees by Defendants failed to accurately account for wages, overtime, and premium pay, including by failing to pay for all hours worked, failure to pay for all overtime hours worked and for providing deficient meal periods and rest breaks...."[7]

The Sixth, Seventh, and Eighth Causes of Action for violations of Labor Code sections 221, 204, and 203, respectively, all pertain to unpaid (or untimely paid) wages during and/or at the termination of employment.[8]

The Twelfth Cause of Action for violations of Business and Professions Code section 17200, et seq., is, by definition, an entirely derivative claim based on all other alleged Labor Code claims.[9]

Plaintiff's Remaining Causes of Action – Withdrawn or Within Supplemental Jurisdiction

Plaintiff's counsel has separately communicated to Defendants' counsel that the claims stated under the Tenth Cause of Action would be withdrawn.[10]

As to Plaintiff's remaining Ninth Cause of Action (setting aside that there is no private right of action under Labor Code sections 1174 and 1174.5[11]), Eleventh Cause of Action, and any portion of the other causes of action that do not invoke LMRA preemption described above, this Court would have supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

However, as set forth below, <u>all of Plaintiff's remaining claims, inclusive of his First and Eleventh Causes of Action</u>, are preempted under the LMRA because such claims are subject to an agreement to arbitrate that contains a "clear and unmistakable" waiver of this judicial forum, as

---

[7] Complaint, at ¶96.
[8] *See* Complaint, at ¶¶104, 108-110, and 117.
[9] *See* Complaint, at ¶¶143 and 146.
[10] *See* Bothamley Decl., at ¶2 and **Exhibit A** at Page 1 ( "<u>The Records Request Claim</u>: We looked into your concerns regarding the records request cause of action/claim. We realized we were going by a date three days earlier than we should have and will be agreeable to dismissing that claim in the federal case.")
[11] *See Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 958 (N.D. Cal. 2016) (holding Labor Code § 1174(d) allows LWDA to seek penalties for violation but does not provide a private right of action, stating "Private rights of action for civil penalties under the Labor Code generally arise under the California Private Attorney General Act, not under the Labor Code directly.")

well as under Step 2 of the *Burnside* analysis and.

### 2. The CBA's Grievance Procedure Provides a "Clear and Unmistakable" Waiver of a Judicial Forum, such that Plaintiff's Rights to Remedies Arise Out of the CBA.

Where a CBA contains an arbitration provision that clearly and unmistakably waives a plaintiff's rights to a judicial forum for adjudication of their claims, "arbitration becomes the sole method by which a plaintiff may pursue her legal remedies, and the plaintiff's rights to a remedy necessarily arise out of the collective bargaining agreement." *Renteria-Hinjosa v. Sunsweet Growers, Inc.*, 2023 U.S. Dist. LEXIS 179974 at *12, 2:23-cv-01413-DJC-DB at *9-10 (E.D. Cal. Oct. 3, 2023).

Section 16.00 of the CBAs includes language that is more than sufficient to satisfy the "clear and unmistakable" standard. The Section provides in relevant part:

> **Any grievance, complaint or dispute of an Employee**, the Employer or the Union **against the other or against Dreisbach Enterprises, Inc. with respect to** the discipline or termination of an Employee (except as provided in Section 07.03) or the interpretation or application of this Agreement or **any wage and hour claim arising during his/her current or prior employment with the Employer or Dreisbach Enterprises, Inc. under state,** local or federal **law** (subject to applicable state, local or federal statutes of limitation)**, including, without limitation, claims under the California Labor Code, the California Business and Professions Code,** and any other applicable federal, state, or local wage and hour law, **shall be handled on an individual basis (and not on a representative or class basis in this or any other forum) exclusively as hereafter set forth.**

Plaintiff's only argument to claim otherwise is that "[m]ere reference to the California Labor Code is hardly specific," but no case authority states anything more exacting is required, and several courts have found this to be more than sufficient. *See Burmudez v. Dragados USA, Inc.*, at *6 (E.D. Cal. Nov. 18, 2021) (waiver "clear and unmistakable" which identified "all claims and claims for associated penalties arising under the federal Fair Labor Standards Act, the California Labor Code, and Wage Order 16 will be resolved through the procedures set forth in this Section 9[.]'" and rejecting the plaintiff's contention that the CBA needed to "specify particular Labor Code or Wage Order provisions (or otherwise match the particularities of his allegations)"); *Cortez v. Doty Bros. Equip. Co.*, 15 Cal.App.5th 1, 14-15 (2017); ("clear and unmistakable" waiver where

1  CBA arbitration provision did not mention Labor Code, but included an agreement to arbitrate
2  claims "arising under" Wage Order 16-2001); *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal.App.4th
3  676, 684-86 (2014) ("clear and unmistakable" waiver where CBA arbitration provision expressly
4  included "all claims, disputes and controversies arising out of, relating to or in any way associated
5  with [Lane's] employment by [FCM]" and that these arbitrable claims or disputes included, but
6  were not limited to, "wage, hour and benefit claims")

The standard is "clear and unmistakable," <u>not</u> absolute laser-precision perfection. No reasonable person reading the Parties' CBA's grievance procedure could believe that the intent was anything other than waiving a judicial forum in exchange for arbitration.

However, as addressed below, by disputing application of the arbitration provisions of the CBAs to his claims, Plaintiff necessarily creates a disputed interpretation of those provisions that establishes a second basis for LMRA preemption.

### D. Defendants Satisfy Step Two of the *Burnside* Analysis for LMRA Preemption.

**1. Plaintiff's Claims are Substantially Dependent Upon Interpretation of the CBA, Preempting Such Claims and Establishing Grounds for Jurisdiction.**

**i. Plaintiff's disputed applicability and interpretation of the CBA's Grievance Procedure concedes that Plaintiff's rights to pursue claims in a judicial forum requires interpretation of the CBA.**

Plaintiff disputes that his claims, brough under the California Labor Code and the California Business and Professions Code, fall within terms of the CBA's Grievance Procedure at Section 16.01. This is established not only by Plaintiff's refusal to proceed with arbitration as to the claims at issue in this litigation, but his subsequent filing of a PAGA action after this case was removed and was provided with copies of the applicable CBAs.[12]

Plaintiff also argues that the CBAs' arbitration provisions are insufficient "clear and unmistakable" to establish that the CBA requires final and binding arbitration of his claims, and asks that this Court apply *his* interpretation instead of Defendants' interpretation. But as this Court acknowledged in *Gay v. Pac. Steel Grp.*, 2021 U.S. Dist. LEXIS 112164 at *8, No. 20-cv-08442-HSG at *1 (N.D. Cal. June 15, 2021), such an argument also concedes preemption:

---

[12] Bothamley Decl., ¶3; *See* Dkt. No. 1-3 (Declaration of Karen Carlson in Support of Defendants' Removal, ¶5 and **Exhibits A & B** at Sections 16.00).

> Plaintiffs argue that the CBA's grievance procedure is insufficient to establish that the CBA requires final and binding arbitration of disputes. *Id*. **Plaintiffs' argument is self-defeating, since they are asking the Court to consider the CBA's detailed grievance procedure and find that, as a matter of law, the procedure does not provide for final and binding arbitration of disputes. In other words, to adjudicate Plaintiffs' argument, the Court will necessarily have to interpret the scope and validity of the CBA's grievance procedure provisions.** The necessity of such an analysis satisfies the preemption test's standard of "an active dispute over 'the meaning of contract terms.'" *See Curtis*, 913 F.3d at 1153. It may be that Plaintiffs will prove to be correct in their arguments about the applicability of the CBA's grievance procedure and the operation of the statutory exemptions, but the Court clearly cannot conduct that analysis without resolving "questions about the scope, meaning, or application of the CBA." Id. ("[A] state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA."). Accordingly, the Court finds that the second prong of the § 301 preemption test is satisfied with respect to Plaintiffs' overtime, meal period, and rest period claims.

Thus, Plaintiff's rights to pursue each of his claims in court, as opposed to arbitration, *cannot* be answered without interpreting the meaning of Section 16.01, including whether it includes a "clear and unmistakable" waiver of a judicial forum for Plaintiff's claims.

Notably, Plaintiff desires to have this court resolve his Motion to Remand prior to any determination of arbitrability out of fear that interpretation of the CBA would be required to determine arbitrability and enforceability of the CBA's arbitration provision. As expressed by Plaintiff's counsel in a meet and confer about this very issue:

> However, whether there is a class waiver and whether it is enforceable and what is or isn't carved out of arbitration and such are questions that should not be decided by the federal court either. At a minimum, they should not be decided until we determine whether we will be remanded or not.
> The more we agree to allow the federal court to decide the class waiver or arbitration agreement details it lessens our very argument at hand that no interpretation of anything is required – that's why we believe the Motion to Remand must be decided first.[13]

Plaintiff's both express (as detailed above) and implied (from his refusal to pursue arbitration in the first instance) dispute as to the interpretation, applicability, and enforceability of the CBA, only underscores the applicability of LMRA preemption arising from application of the CBAs' arbitration provisions, justifying federal question jurisdiction.

---

[13] *See* Bothamley Decl., **Exhibit B** at Page 2.

### ii. Interpretation of the CBA's definition of "compensable time" is required to resolve Plaintiff's claims.

The majority of Plaintiff's claims are premised upon, either in whole or in part, the allegation that Plaintiff and other employees performed work for which they were not compensated.

California's IWC Wage Orders define compensable time as "time during which an employee is subject to the control of an employer" and "all the time the employee is suffered or permitted to work, whether or not required to do so." *See, e.g.,* IWC Wage Order 9-2001, Section 2(H)  The California Supreme Court has held these two prongs are "independent factors, each of which defines whether certain time spent is compensable as 'hours worked.' " *Frlekin v. Apple*, 8 Cal.5th 1038, 1046 (2020).

However, entitlement to wages provided under the CBA is guided by Section 10.07 of the CBA, which provides:

> Time worked shall be computed by totaling the time worked by the Employee each day based on the Employee's time records. Time paid for but not worked, including any paid holiday, sick and vacation time, shall not be used in computing overtime.

Plaintiff's claims clearly seek to leverage rates of pay provided solely from the terms of the CBA, not only for unpaid straight-time and overtime premium rates, but for unpaid meal and rest premiums at employees' regular rate of compensation, failure to accurately specify applicable rates of pay on wage statements, and unpaid wages at termination of employment.  But those claims *cannot* be resolved without interpretation of the CBA.

For example, do the CBA's wage rates apply only to "time worked" as defined or computed pursuant to Section 10.07?  Or do CBA's wage rates apply to all "hours worked" as defined by California's IWC Wage Orders and California Supreme Court decisions?  If an employee has "hours worked" under California law, but not "time worked" under the CBA (for example, because work time was not recorded in the employee's time records), does that mean that CBA wage rates do not apply to wages for those hours, for overtime wages resulting from those hours, or both?  Will a trier of fact be required to separate "hours worked" that are not also "time worked" to determine what amounts go towards overtime premium rates or when California's minimum-wage laws apply

versus the CBA's minimum wage entitlements?  Does this mean that overtime premiums must be calculated based on a weighted average of minimum wage and CBA rates for those hours?

These questions cannot be answered "by simply looking to… the CBA" – they necessarily require interpretation of the intent and meaning of its terms.  As a consequence, the second step of the *Burnside* analysis is satisfied, justifying federal-question removal based on LMRA preemption.

## III.  CONCLUSION

For the foregoing reasons, Defendants request that the Court deny Plaintiff's Motion to Remand.

Dated:  February 21, 2024                                        JACKSON LEWIS P.C.


                                                                                */s/ Sean M. Bothamley*
                                                                                Scott P. Jang
                                                                                Sean M. Bothamley
                                                                                Jimmy Macias
                                                                                Attorneys for Defendants
                                                                                COOLPOINT MANAGEMENT LLC;
                                                                                DREISBACH ENTERPRISES, INC.


4896-2604-4583, v. 1